In the
# United States Court of Appeals
# for the Sixth Circuit

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

AMANDA HOVANEC,

Defendant-Appellant.

_____

On Appeal from the United States District Court
for the Northern District of Ohio
No. 3:22-cr-00274-JRK
The Hon. James R. Knepp II, U.S. District Judge

---

## REPLY BRIEF OF DEFENDANT-APPELLANT

---

Benjamin S. Morrell
Taft Stettinius
& Hollister LLP
111 East Wacker Drive
Suite 2600
Chicago, IL 60601
Tel.: (312) 527-4000
Fax: (312) 527-4011
bmorrell@taftlaw.com

Emily A. England
Taft Stettinius
& Hollister LLP
675 Fifteenth Street
Suite 2300
Denver, CO 80202
Tel.: (303) 297-2900
Fax: (303) 298-0940
eengland@taftlaw.com

*Appointed Counsel for Defendant-Appellant*

# Table of Contents

Table of Contents ........................................................................................ii

Table of Authorities ................................................................................iii

Introduction ...............................................................................................1

Argument....................................................................................................2

I. The district court's mischaracterizations of both Dr. Brams' role and her psychological evaluation report resulted in a procedurally unreasonable sentence ................................................................................2

    A. The district court's factual errors are not insulated by plain-error review ....................................................................................2

    B. The district court erred by mischaracterizing Dr. Brams as a "hired advocate" and the evidence in her report as unsubstantiated......................................................................................5

        1. Dr. Brams was not a "hired advocate" ....................................5

        2. Dr. Brams' report was not completely unsubstantiated...........7

        3. These mischaracterizations combine to create a clear (or alternatively, plain) error of fact by the district court ...............8

II. Ms. Hovanec's sentence is substantively unreasonable for these same reasons...........................................................................................13

III. The district court erred in applying the aggravating role enhancement ...... 15

IV. The district court erred in applying the obstruction enhancement ............. 17

Conclusion ...............................................................................................19

Certificate of Compliance ....................................................................21

Certificate of Service ..........................................................................22

# Table of Authorities

Page(s)

**Cases**

*Greer v. United States,*
593 U.S. 503 (2021) ........................................................ 11

*McMullen v. Dalton,*
83 F.4th 634 (7th Cir. 2023) ...................................... 9, 10, 11

*United States v. Bostic,*
371 F.3d 865 (6th Cir. 2004) .................................... 2, 3, 5, 18

*United States v. Gardner,*
32 F.4th 504 (6th Cir. 2022) ............................................ 13

*United States v. Gillespie,*
713 F. App'x 471 (6th Cir. 2017) ........................................ 9

*United States v. Gillis,*
592 F.3d 696 (6th Cir. 2009) ........................................... 19

*United States v. Hatcher,*
947 F.3d 383 (6th Cir. 2020) ......................................... 11, 12

*United States v. Johnson,*
26 F.4th 726 (6th Cir. 2022) ........................................... 13

*United States v. Knight,*
756 F. App'x 571 (6th Cir. 2018) ...................................... 19

*United States v. Minter,*
80 F.4th 753 (6th Cir. 2023) ........................................... 19

*United States v. Price*,
    901 F.3d 746 (6th Cir. 2018) .................................................................13, 13

*United States v. Ross*,
    216 F.3d 1089 (10th Cir. 2000) ................................................................... 15

*United States v. Salyers*,
    592 F. App'x 483 (6th Cir. 2015) ................................................................ 16

*United States v. Vonner*,
    516 F.3d 382 (6th Cir. 2008) ........................................................... 2, 3, 4, 5

*United States v. Warren*,
    959 F.2d 237, 1992 WL 68237 (1992) ......................................................... 17

## Statutes

18 U.S.C.
    § 3553 ....................................................................................................13, 14

USSG
    § 3B1.1 ..................................................................................................15, 17

## Federal Rules

Fed. R. Crim. P.
    Rule 32 ....................................................................................................... 19
    Rule 51 ...................................................................................................... 3, 4

# Introduction

The government's attempts to rehabilitate or distract from the district court's errors at sentencing fail to persuade. In defending the court's erroneous conclusion that the evidence in Dr. Brams' report was completely unsubstantiated, the government quibbles about credibility determinations, which misses the point. The district court could not make an accurate credibility determination because of a more fundamental error: mistaking evidence of childhood abuse and neglect corroborated by two others as solely coming from Ms. Hovanec herself. And the government does not meaningfully dispute that the district court mischaracterized Dr. Brams as a "hired advocate." These glaring factual errors require resentencing regardless of whether plain-error review applies.

The district court wrongly applied the aggravating role enhancement by relying on unsupported assumptions and irrelevant factors. It overemphasized Ms. Hovanec's post-offense statements and her romantic relationship with Theodorou, despite significant evidence that he acted independently and even took more steps in the initial stages of the plot than she did. Additionally, the court's finding that she stood to gain financially or through gaining sole custody of her children does not find support in the record.

The government also attempts to insulate from this Court's review the district

court's erroneous application of the obstruction enhancement. It argues that plain-error review applies despite Ms. Hovanec raising this below issue in a letter to the probation officer and through argument at the sentencing hearing—and the district court explicitly noting this issue was preserved for appeal when it asked the *Bostic* question. What the record shows is that the district court predetermined that it would apply this enhancement regardless of what went on at the sentencing hearing. It also committed legal error by relying on a case that had nothing to do with the obstruction enhancement. Ms. Hovanec thus did not have a full opportunity to present this issue.

This case should be remanded so the district court can fully and fairly evaluate the evidence before resentencing Ms. Hovanec.

## Argument

### I. The district court's mischaracterizations of both Dr. Brams' role and her psychological evaluation report resulted in a procedurally unreasonable sentence.

#### A. The district court's factual errors are not insulated by plain-error review.

The government argues that the Court should review this issue only for plain error. (Gov't's Br. at 58–60.) Plain-error review applies on appeal to issues that a party forfeited in the district court by failing to object "after being given an opportunity to do so." *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc)

(cleaned up). Satisfying this standard requires showing an "(1) error (2) that was obvious or clear, (3) that affected [the] defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (cleaned up).

The government points out that at the end of the sentencing hearing, the district court asked whether the defense had "any other procedural or substantive objections" to Ms. Hovanec's sentence (other than the "two enhancements" also at issue in this appeal), and defense counsel responded in the negative. (R. 163, Sentencing Hr'g Tr., PageID 3714; *see* Gov't's Br. at 60.) This Court has previously referred to this procedure as asking "the *Bostic* question." *Vonner*, 516 F.3d at 390; *see United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004). And the Court has made clear that neither the defense nor the government "has any obligation to raise objections already made" in response to this question:

> The point of the question is not to require counsel to repeat objections or, worse, to undo previously raised objections. It is simply to give counsel one last chance to preserve objections for appeal that counsel has not yet seen fit to raise or has not yet had an opportunity to raise.

*Vonner*, 516 F.3d at 390.

Federal Rule of Criminal Procedure 51 provides that "[e]xceptions to rulings or orders of the court are unnecessary" and "[a] party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the

action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." Fed. R. Crim. P. 51. Additionally, the Court in *Vonner* clarified that "[a] litigant has no duty to object to the 'reasonableness' of the length of a sentence (or to the presumption of reasonableness) *during* a sentencing hearing, just a duty to explain the grounds for leniency." 516 F.3d at 389. "That is because reasonableness is the standard of *appellate* review, not the standard a district court uses in imposing a sentence." *Id.* Thus, plain-error review "does not apply" to challenges to the reasonableness of the length of a sentence. *Id.*

Ms. Hovanec preserved the issues related to Dr. Brams' report by raising them in the district court. She submitted a sentencing memorandum discussing the report, including the "[g]reater detail" into Ms. Hovanec's social background and the "psychological insight" it provided. (R. 128, Def.'s Sentencing Mem., PageID 2546.) The sentencing memorandum specifically highlighted Dr. Brams' role: "Dr. Brams makes it clear that her report is not offered to excuse Amanda's offense behavior. It is offered to help the Court understand Amanda's state of mind at the time of the offense and how she got there." (*Id.*, PageID 2545.) It also addressed the corroboration issue: "In the event of suggestion of self serving or embellishment by Amanda, the Court should bear in mind two of Amanda's sister[s] corroborated this history, and one of them has been in therapy for ten years trying to come to grips

with the fallout. It is not just Amanda." (*Id.*)

Ms. Hovanec thus specifically raised these issues before the district court, making plain-error review inappropriate. She was not required to re-raise them when the district court asked the *Bostic* question. *See Vonner*, 516 F.3d at 390. Ms. Hovanec is entitled to relief regardless, however (as discussed below), because the district court's factual errors are "plain" in addition to being "clear."

## B. The district court erred by mischaracterizing Dr. Brams as a "hired advocate" and the evidence in her report as unsubstantiated.

### 1. Dr. Brams was not a "hired advocate."

Dr. Brams' psychological evaluation report specifically states that she "was retained for her time and expertise, and not to provide any predetermined opinions regarding this legal matter," and that she provided an objective "assessment of Ms. Hovanec's history, functioning, and prognosis." (R. 129-2, Psych. Eval., PageID 2553–54.) The district court, however, dismissed her report as being the work of "hired advocate." (R. 163, Sentencing Hr'g Tr., PageID 3705–06.) Ms. Hovanec's principal brief explains that this was clear error because it contradicts not only the record, including the report itself, but also courts' consistent guidance that it is improper to consider psychiatrists and psychologists who assess an individual's mental health as having an advocacy role. (Def.'s Principal Br. at 27–28, 30–32.)

The government offers no response other than repeating its argument at sentencing that Dr. Brams "did not note conducting any 'independent, objective, or reliable testing,' including Hovanec's 'intelligence' or 'functioning' levels, whether she was 'malingering″ or 'truly suffers from autism.'" (Gov't's Br. at 62 (quoting R. 163, Sentencing Hr'g Tr., PageID 3698).) From this, the government concludes, "it was permissible for the [district] court to view [Dr. Brams'] opinion more as a hired advocate by simply accepting Hovanec's self-reported history." (*Id.*)

The government thus repeats its error at sentencing—which the district court adopted—mischaracterizing Dr. Brams' report by stating that "nothing in there was substantiated." (R. 163, Sentencing Hr'g Tr., PageID 3699–3700.) As Ms. Hovanec has explained at length, Dr. Brams interviewed two of Ms. Hovanec's sisters, who both corroborated the significant history of physical, mental, and emotional abuse she suffered as a child, and described their own mental health issues caused by lasting trauma, substantiating Ms. Hovanec's mental health disorders discussed in the report (in particular, her PTSD). (*See* Def.'s Principal Br. at 13–17, 27–32.) The government cannot explain away one clear error of the district court by relying on another.

Beyond that, the government's argument does not logically flow. Even if it were the case that Dr. Brams relied solely on Ms. Hovanec's self-reporting (and it is

not), that would not transform her into a "hired advocate." Nor would it contradict her explicit statements that she "was retained for her time and expertise, and not to provide any predetermined opinions regarding this legal matter," and that she provided an objective "assessment of Ms. Hovanec's history, functioning, and prognosis." (R. 129-2, Psych. Eval., PageID 2553–54.) Questioning an expert's methodology in this manner does not transform a dispassionate medical professional into an advocate.

### 2. Dr. Brams' report was not completely unsubstantiated.

The government's brief engages more with the district court's second clear error of fact. It agrees that the district court "accept[ed] the government's view about unsubstantiated abuse" with respect to Dr. Brams' report (Gov't's Br. at 62), but attempts to downplay its own statement at sentencing, now saying that it merely "noted" then that "the psychological report mostly relied on unsubstantiated 'self-reporting' by Hovanec," (*id.* at 61 (quoting R. 163, Sentencing Hr'g Tr., PageID 3698)). But that is not accurate. At sentencing, the government declared that "*nothing* in there was substantiated." (R. 163, Sentencing Hr'g Tr., PageID 3699–3700 (emphasis added).) These are very different statements, and the latter is objectively wrong.

The government then repeatedly stresses that it found only one police report

that corroborates the Hovanec sisters' accounts of suffering horrific, pervasive domestic violence during their upbringing. (Gov't's Br. at 8, 61–62, 77.) The government somehow concludes from the results of this one record check from a single law enforcement agency that Ms. Hovanec and two of her sisters each separately lied about "the scope of purported extreme home violence and resulting trauma that Hovanec reportedly suffered growing up." (*Id.* at 62.) This argument misses the point. At issue here is not a credibility determination but rather an objective description of the mitigating evidence's nature. In order to properly make a credibility determination, the district court *first* needs to recognize the evidence for what it is.

The district court failed to do that here. It mischaracterized the most important evidence in the record of Ms. Hovanec's social background (and related evidence of her mental health) as solely coming from Ms. Hovanec when it was in fact corroborated twice over. The government's attempt to distract from that point by repeatedly discussing its failure to find more police reports from decades ago thus fails.

### 3. These mischaracterizations combine to create a clear (or alternatively, plain) error of fact by the district court.

Taken together, the district court's two factual errors related to Dr. Brams' report leave a "definite and firm conviction that a mistake has been committed."

*United States v. Gillespie*, 713 F. App'x 471, 474 (6th Cir. 2017) (cleaned up); (*see* Def.'s Principal Br. at 27–32).

The Seventh Circuit's decision in *McMullen v. Dalton*, cited in Ms. Hovanec's principal brief, warrants further discussion here. 83 F.4th 634, 638 (7th Cir. 2023), *reh'g denied*, No. 20-3273, 2023 WL 7130872 (7th Cir. Oct. 30, 2023); (*see* Def.'s Principal Br. at 29). There, the court vacated the denial of a § 2254 petition where a state court had made errors similar to the district court's here. That is, "the sentencing court mischaracterized the nature and sources of the mitigating evidence" and the state appellate court adopted and repeated these errors. *Id.* at 646. McMullen argued that he had received ineffective assistance of counsel at sentencing, and presented on postconviction review in state court "affidavits from friends, family, and a licensed marriage and family therapist, as well as reports concerning his mental health—none of which had been produced before or introduced at the sentencing hearing." *Id.* at 639. This included a psychological evaluation report similar to Dr. Brams' report here, which "noted McMullen's history of childhood abuse and neglect" and diagnosed him with mental heath disorders, including PTSD. *Id.* at 639–40.

The Seventh Circuit found that the Indiana Court of Appeals, in rejecting McMullen's ineffective-assistance claim, had "failed to evaluate the totality of the

available mitigation evidence, which is significant and compelling." *Id.* at 646. "First, it did not consider whether the unpresented mental health evidence would have led the trial court to sentence McMullen to less than the statutory maximum," instead limiting its consideration to the evidence that "could have been offered by his friends and family." *Id.* Second, the court found that the undiscovered mitigating evidence was "different in kind, rather than cumulative" of the PSR, as the PSR's information on McMullen's background came only from McMullen himself. *Id.* By contrast, the evidence that trial counsel failed to present at sentencing was corroborated by others and more detailed. *Id.* For these reasons, the court found that the undiscovered mitigating evidence could have influenced the state trial court's sentencing decision and that the likelihood of a different result was sufficient to undermine confidence in the outcome of the sentencing hearing. *Id.* at 647.

*McMullen* thus grappled with similar errors to the district court's here, and both cases involve non-identical but nonetheless deferential standards. *McMullen* highlighted the fundamental difference between evidence of social background (including childhood abuse and neglect similar to that which Ms. Hovanec and her sisters endured) and mental health (including, as here, PTSD) coming from only the defendant and such evidence being corroborated by others. *Id.* at 646. Ms. Hovanec

discusses that issue above and in her principal brief. *McMullen* also stressed that mischaracterizing the nature of mitigating evidence can be a significant error. There, it had to do with the state court considering only evidence of social background to the exclusion of mental health evidence. The district court's analogous error here was characterizing Dr. Brams as a "hired advocate" when she was an objective medical professional. Thus, the errors that compelled the Seventh Circuit to vacate the denial of a § 2254 petition in *McMullen* should compel this Court to afford Ms. Hovanec a new sentencing hearing.

Even if the Court reviews Ms. Hovanec's procedural reasonableness challenge only for plain error, Ms. Hovanec is still entitled to a new sentencing hearing. As discussed above, the district court committed two factual errors, and these errors are open and obvious, as the record demonstrates. Ms. Hovanec must also show that these errors affected her "substantial rights," which "generally means that there must be a reasonable probability that, but for the error, the outcome of the proceeding would have been different. *Greer v. United States*, 593 U.S. 503, 508 (2021) (cleaned up). "A sentencing error affects a defendant's substantial rights when there is a reasonable probability that, but for the error, she would have received a more favorable sentence." *United States v. Hatcher*, 947 F.3d 383, 394 (6th Cir. 2020) (citation omitted). "A 'reasonable probability' is a probability sufficient to undermine

confidence in the outcome." *Id.* (citation omitted).

The district court expressed willingness to depart downward from the only sentence within the guidelines range—life without parole—without properly evaluating the most important mitigating evidence in the record. Had the district court correctly recognized that Dr. Brams was an objective medical professional rather than a hired advocate, and that Ms. Hovanec's statements regarding her significant history of childhood trauma and mental health were in fact corroborated twice over, there is (at the very least) a reasonable probability that it would have issued a lower sentence than 40 years in prison.

The district court's errors also affected the "fairness, integrity or public reputation of judicial proceedings." *Hatcher*, 947 F.3d at 394 (citation omitted). Where "the district court based its sentence in part on a belief unsupported by the factual record, this prong of the plain-error standard is satisfied." *Id.* at 396. The district court's belief that Dr. Brams was a "hired advocate" and that the evidence in her report was completely unsubstantiated satisfy this prong. The Court should therefore vacate and remand for resentencing regardless of whether it determines that plain-error review applies.

## II. Ms. Hovanec's sentence is substantively unreasonable for these same reasons.

"[A] defendant need not raise a substantive reasonableness claim in the district court to preserve it for appeal." *United States v. Price*, 901 F.3d 746, 749 (6th Cir. 2018). Thus, plain-error review does not apply here regardless of how the Court finds on that issue with respect to procedural reasonableness. *See id.*

In evaluating substantive reasonableness, the Court "consider[s] whether the length of a sentence conforms with the sentencing goals set forth in 18 U.S.C. § 3553(a), and whether the district judge abused his discretion in determining that the § 3553(a) factors supported the sentence imposed." *United States v. Johnson*, 26 F.4th 726, 736 (6th Cir. 2022) (cleaned up). "In other words, the question turns on whether the district court imposed a sentence that is greater than necessary, even if it followed proper procedures and gave adequate consideration to the § 3553(a) factors." *Id.* (cleaned up). The substantive reasonableness inquiry considers the totality of the circumstances. *Id.*

The government correctly notes that a presumption of substantive reasonableness applies to Ms. Hovanec's sentence, simply because it is below the Guidelines range. (Gov't's Br. at 75.) "But a defendant can rebut this presumption if a district court chose a sentence arbitrarily, ignored pertinent § 3353(a) factors, or gave unreasonable weight to any single factor." *United States v. Gardner*, 32 F.4th

504, 530 (6th Cir. 2022).

The district court's factual errors here—mischaracterizing Dr. Brams as a "hired advocate" and the evidence in her report as completely unsubstantiated—combine to rebut the presumption of reasonableness. Specifically, they resulted in the district court giving unreasonably little weight to "the history and characteristics of the defendant." 18 U.S.C. 3553(a)(1). That Ms. Hovanec received a below-guidelines sentence does not place the district court's actions beyond this Court's review. Notably, the guidelines range in this case was no range at all. An offense level of 43 provides life without parole as the only possible sentence within the guidelines range, regardless of a defendant's criminal history category. USSG Ch. 5, Pt. A. The lack of discretion provided by the guidelines "range" here should thus factor into this Court's review.

The district court exercised its discretion to depart slightly downward and issue a sentence of 480 months—which, as a practical matter, can function as a life sentence in many cases. Had it been able to evaluate Dr. Brams' report in the correct frame, it likely would have given more weight to Ms. Hovanec's "history and characteristics," justifying a departure further downward. Thus, for the reasons discussed above, the district court's factual errors resulted in a substantively unreasonable sentence.

**III.    The district court erred in applying the aggravating role enhancement.**

Ms. Hovanec's principal brief explains that the district court's factual errors discussed above infected its analysis of the aggravating role enhancement. (Def.'s Principal Br. at 37–38.) While the government continues to harp on Ms. Hovanec's statement that she "made them all do it," Ms. Hovanec addressed and contextualized that statement in her principal brief as well. (*Id.* at 33–35, 37.) Section 3B1.1 focuses on a defendant's actions during the criminal activity at issue rather than her statements after the fact. *See* USSG § 3B1.1, app. n. 4. Relatedly, the district court erred by focusing too heavily on the fact that Ms. Hovanec and Theodorou were romantically involved. (*See* Def.'s Principal Br. at 35–36.) Where "[t]he record establishes a romantic relationship between codefendants, . . . that relationship alone does not confer management authority" on one of them. *United States v. Ross*, 216 F.3d 1089 (10th Cir. 2000) (vacating and remanding sentence after finding "the district court erred in concluding the two-level increase for a management role was warranted").

Theodorou independently engaged in significant amounts of criminal activity furthering the plan to kill T.H. while in South Africa, on the other side of the world from Ms. Hovanec. (Def.'s Principal Br. at 33–37.) That she briefly traveled to South Africa to meet with the third hitman candidate Theodorou had already procured

does not transform Theodorou into an automaton under her control. Theodorou acted with significant independence and took more steps in the initial plan to kill T.H. than Ms. Hovanec did. He thus did not "t[ake] orders" from Ms. Hovanec. *See United States v. Salyers*, 592 F. App'x 483, 485 (6th Cir. 2015) (vacating and remanding based on an improper application of § 3B1.1 where the evidence did "not demonstrate that defendant exercised control over any other participant"). Instead, as the FBI case agent put it, Theodorou "wanted to be with Amanda, so he was doing whatever he needed to do to facilitate that end result." (R. 163, Sentencing Hr'g Tr., PageID 3600.)

The government also defends the application of this enhancement by highlighting the district court's finding that Ms. "Hovanec stood to benefit [from T.H.'s death] financially and 'by getting her children.'" (Gov't's Br. at 66 (quoting R. 163, Sentencing Hr'g Tr., PageID 3653).) But the government submitted no evidence to support its conjecture that Ms. Hovanec "would [financially] benefit from his estate" simply because she was still married to him. (R. 163, Sentencing Hr'g Tr., PageID 3633).) As both parties have discussed, Ms. Hovanec and T.H. were in the midst of protracted and bitter divorce proceedings at the time of his death. The government did not prove that T.H. died intestate or that he had a will bequeathing

anything to Ms. Hovanec.

Even the district court acknowledged the lack of evidence on this point, commenting that Ms. Hovanec "would have *presumably* benefited, as she was still married to him." (*Id.*, PageID 3653.) The district court's reliance on this unsupported assumption further shows its error in applying the aggravating role enhancement. *Cf. United States v. Warren*, 959 F.2d 237, 1992 WL 68237, at *4–5 (6th Cir. 1992) (table) (vacating and remanding where "uncertainty concerning the identity of the individuals involved in the criminal activity" existed related to the application of § 3B1.1).

The government identifies no authority supporting the district court's finding that Ms. Hovanec's children qualify as "fruits of the crime," especially in the context of a conviction for drug distribution resulting in death. *See* USSG § 3B1.1, app. n. 4. And Ms. Hovanec already had primary custody over the children while T.H. was alive, so the "fruit" must have been sole custody (which Ms. Hovanec never actually obtained). This is too intangible, indeterminate, and esoteric to qualify as "fruits of the crime" for purposes of the aggravating role enhancement.

## IV. The district court erred in applying the obstruction enhancement.

The government appears to assume that plain-error review muffles Ms. Hovanec's challenge to this enhancement's application. (*See* Gov't's Br. at 72–73.)

The government is wrong. Ms. Hovanec objected to the obstruction enhancement both before and at the sentencing hearing and thus preserved this issue for appeal. (R. 128-1, Ltr. to Prob. Officer, PageID 2552; R. 163, Sentencing Hr'g Tr., PageID 3644–48.) Further, when the district court asked the *Bostic* question at the end of the sentencing hearing, it explicitly noted that the defense had, "obviously, preserved your right to argue about the two enhancements," including the obstruction enhancement. (R. 163, Sentencing Hr'g Tr., PageID 3714.)

The government argues that the district court did not err despite the court's admission that it had made up its mind about this enhancement's application before the sentencing hearing. (Gov't Br. at 73–74; *see* R. 163, Sentencing Hr'g Tr., PageID 3654.) The government asserts that the court gave "the parties an extensive, full and fair opportunity to present arguments about its applicability" and "the court's findings reflected that it considered and responded to those arguments." (*Id.* at 73.) But giving defense counsel all the time in the world to argue the point is meaningless where the argument falls on deaf ears because the court's mind is already made up. This Court often finds that a district court means what it says when it makes comments at sentencing, and the Court should take the district court here at its word when it admitted to predetermining this issue. A new sentencing hearing is thus required to afford Ms. Hovanec a meaningful opportunity to speak on her

behalf pursuant to Rule 32. *See* Fed. R. Crim. P. 32(i)(4)(A)(i)–(ii).

The district court's legal error, grounding its decision in a case that has nothing to do with the obstruction enhancement, similarly requires vacatur and remand. (*See* Def.'s Principal Br. at 40); *United States v. Minter*, 80 F.4th 753 (6th Cir. 2023). The government assumes that the district court misspoke because it discussed the aggravating role enhancement as well, which was at issue in *Minter*. (Gov't's Br. at 73.) This Court is entitled to take the district court at its word, however, and this issue is subject to de novo review. *See United States v. Knight*, 756 F. App'x 571, 575 (6th Cir. 2018). As such, the face of the sentencing transcript shows that the district court committed a legal error in applying this enhancement. The government makes a single, unsupported assertion that this error was harmless, but fails to meet its burden to prove that the error did not affect Ms. Hovanec's substantial rights. (Gov't's Br. at 73); *see United States v. Gillis*, 592 F.3d 696, 699 (6th Cir. 2009). As discussed above, Ms. Hovanec's substantial rights were affected by (at least) the district court's other error—predetermining that this enhancement applied before the sentencing hearing. Citing the wrong legal authority provides further evidence that the court had its mind made up beforehand.

## Conclusion

For the reasons discussed above and in Ms. Hovanec's principal brief, the

Court should vacate Ms. Hovanec's sentence and remand to the district court for resentencing.

Filed: September 15, 2025.

Respectfully submitted,

AMANDA HOVANEC,
*By Counsel*

By      /s/ *Benjamin S. Morrell*
_____
Benjamin S. Morrell
Taft Stettinius & Hollister LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Tel.: (312) 527-4000
Fax: (312) 527-4011
bmorrell@taftlaw.com

Emily A. England
Taft Stettinius & Hollister LLP
675 Fifteenth Street, Suite 2300
Denver, CO 80202
Tel.: (303) 297-2900
Fax: (303) 298-0940
eengland@taftlaw.com

*Appointed Counsel for Defendant-Appellant*

## Certificate of Compliance

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that the foregoing document complies with the type-volume limitation of Rule 32(a)(7)(B)(i). It contains 4,305 words, not counting the items listed in Circuit Rule 32(b).

I further certify that the foregoing document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6). It has been prepared using Microsoft Word 2016 in the proportionally spaced typeface of Equity, in 14-point font size.

Date: September 15, 2025.

By    /s/ *Benjamin S. Morrell*

## Certificate of Service

I certify that on the date listed below, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: September 15, 2025.

By    /s/ *Benjamin S. Morrell*    _____